IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FARMERS INSURANCE COMPANY,
INC., and ROGER KANDT,

          Plaintiffs,

          vs.                        Case No. 02-1447-JTM

SOUTHWESTERN BELL TELEPHONE
COMPANY,

          Defendant.

## MEMORANDUM AND ORDER

       This matter comes before the court on the parties' cross-motions for summary judgment (Dkt. Nos. 18, 19). As a result of the summary judgment briefing, the court certified two questions of law to the Kansas Supreme Court. In June 2005, the Kansas Supreme Court returned an answer on one of the two questions. Based on this answer, the court will now enter a ruling on the parties' cross motions. For the reasons set forth herein, the court grants defendant's Motion for Summary Judgment and denies plaintiffs' Motion for Summary Judgment.

## I. FINDINGS OF FACT

       On September 15, 1997, plaintiff Roger Kandt was involved in an automobile accident in Wichita, Kansas. Mr. Kandt was hit by Roman Williams, an uninsured motorist. At the time of the accident, Mr. Kandt was driving a motor vehicle owned by his employer, Southwestern Bell Telephone Company (hereafter "SBC").

As a result of the accident, on December 15, 1999, Mr. Kandt filed a lawsuit against Roman Williams. On September 15, 2000, Mr. Kandt was awarded a judgment against Mr. Williams in the amount of $593,229.00. At the time of the accident, Mr. Kandt had his own individual policy of automobile insurance with Farmers Insurance Company, Inc. Farmers paid $100,000 of the judgment against Mr. Williams to Mr. Kandt pursuant to the uninsured motorist coverage provided for in his individual automobile insurance policy with Farmers.

On or about December 29, 1997, Mr. Kandt filed a claim for workers compensation with SBC. The workers compensation claim case was settled on March 21, 2002. As a result of the settlement, Mr. Kandt was awarded workers compensation benefits from SBC totaling $83,054.15, which consists of temporary total and permanent partial disability compensation in the amount of $43,664.12,[1] and medical and hospital expenses in the amount of $39,390.03.

On November 13, 2002, plaintiffs filed suit against SBC for $500,000; Mr. Kandt, seeking payment by SBC of the judgment entered against the uninsured motorist; and Farmers seeking reimbursement from SBC of the $100,000 it paid out to Mr. Kandt pursuant to the uninsured motorist provision provided for by his individual automobile insurance policy. SBC is a self-insured entity under the laws of the State of Kansas.

On December 16, 2002, SBC removed this action from the Eighteenth Judicial District Court, Sedgwick County, Kansas, to this court on the basis of diversity jurisdiction.  Pursuant to Kan. Stat. Ann. § 60-3201, the United States District Court for the District of Kansas certified

---

[1] This amount includes $11,923.00 for the purchase of an annuity to be paid to Roger Kandt in increments of $460.00 per year for the life of Roger Kandt, compounding 5% annually, commencing March 20, 2003, for the purchase of an orthopedic shoe associated with the injuries to his right foot that resulted from the automobile accident.

two questions.  The questions are: 1) Are plaintiffs' claims barred by the exclusive remedy provision of the Workers Compensation Act; and 2) under Kansas law, is a self-insurer required to provide uninsured motorist benefits to the occupants of its motor vehicles.  The Kansas Supreme Court answered the questions in reverse order, finding that under Kansas law, a self-insurer is not required to provide uninsured motorist benefits to the occupants of its motor vehicles.  The court did not answer the district court's first question.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgments as a matter of law. Fed.R.Civ.P. 56(c).  In considering a motion for summary judgment, the court must examine all of the evidence in a light most favorable to the opposing party.  Jurasek v. Utah State Hosp., 158 F.3d 506, 510 (10th Cir. 1998).   The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt.  Baker v. Board of Regents, 991 F.2d 628, 630 (10th Cir. 1993).  The moving party need not disprove the nonmoving party's claim or defense; it need only establish that the factual allegations have no legal significance.  Dayton Hudson Corp. v. Macerich Real Estate Co., 812 F.2d 1319, 1323 (10th Cir. 1987).

The party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts.  "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in Matsushita).  The opposing party may not rely upon mere

3

allegations or denials contained in its pleadings or briefs. Rather, the opposing party must present significant admissible probative evidence supporting that party's allegations. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

## III. ANALYSIS

This court's analysis reviews the Kansas Supreme Court's syllabus on the certified questions. The Kansas Supreme Court began with Kan. Stat. Ann. § 40-284, which outlines Kansas law on uninsured/underinsured motorist (hereafter "UM/UIM") coverage.  It provides in relevant part:

> (a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured's legal representative shall be legally entitled to recover as damages from the uninsured owner or operator of a motor vehicle because of bodily injury, sickness or disease, including death, resulting therefrom, sustained by the insured, caused by accident and arising out of ownership, maintenance or use of such motor vehicle, or providing for such payment irrespective of legal liability of the insured or any other person or organization. No insurer shall be required to offer, provide or make available coverage conforming to this section in connection with any excess policy, umbrella policy or any other policy which does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle.

Kan. Stat. Ann. § 40-284.   Plaintiffs argue that self-insurers should be treated the same as other insurers.  <u>See</u> <u>AT&SF Ry. Co. V. Stonewall Ins. Co.</u>, 275 Kan. 698, 749, 71 P.3d 1097 (2003). Defendant argues that the plain language of the statute only applies to purchased insurance policies and does not include self-insurers.  <u>See</u> <u>Overbaugh v. Strange</u>, 254 Kan. 605, 867 P.2d 1016 (1994).

4

The Kansas Supreme Court reviewed the language of Kan. Stat. Ann. § 40-284 and noted that the statute specifically refers to an "automobile liability insurance policy." Such a policy is "an instrument in writing, by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss, by making him a payment in compensation, whenever the event shall happen by which the loss is to accrue." Black's Law Dictionary 1157 (6th ed. 1990). The court noted that since SBC does not contract with itself or pay premiums to itself, SBC does not issue a policy of insurance.

The Kansas Supreme Court also examined other statutes and found that they defined insurers and self-insurers separately. The court found that Kan. Stat. Ann. § 40-3103(g) defines an insurer as "any insurance company, as defined by K.S.A. 40-201, and amendments thereto, authorized to transact business in this state, which issues policies of motor vehicle liability insurance covering liability arising out of the ownership, operation, maintenance or use of a motor vehicle." Kan. Stat. Ann. § 40-201 states: "For the purposes of this article the term 'insurance company' shall, unless otherwise provided, apply to all corporations, companies, associations, societies, persons or partnerships writing contracts of insurance, indemnity or suretyship upon any type of risk or loss." Kan. Stat. Ann. § 40-3103(u) defines a self-insurer as "any person effecting self-insurance pursuant to subsection (f) of K.S.A. 40-3104, and amendments thereto, or any non-resident self-insurer that has filed the form prescribed in subsection (b) of K.S.A. 40-3106, and amendments thereto." See Kan. Stat. Ann. § 40-3104(f). The court noted that even though a self insurer pays liabilities for bodily injury and destruction of a person's property, the statute does not include UM/UIM coverage. See Kan Stat. Ann. §§ 40-3107, 3104(f).

5

Next, the court found that the Kansas Automobile Injury Reparations Act, (hereafter "KAIRA"), Kan. Stat. Ann. § 40-3101 et seq., limited the requirements for self-insurers. Although Kan. Stat. Ann. § 40-3104 as it was originally enacted used the phrase "any judgment," the legislature amended the language so that a self-insurer is now only required to pay "any liability imposed by law."  The court noted that the legislature has not incorporated UM/UIM coverage in the terms "any liability imposed by law" as used in Kan. Stat. Ann. § 40-3104(f). Rather, the legislature defined "liability" narrowly to include only damages caused by accident and arising out of ownership, operation, maintenance or use of the self-insurer's vehicle.  Kan. Stat. Ann. § 40-284.  Thus, liability only results when the self-insured vehicle causes the injuries or damages.  UM/UIM coverage requires the fault lie with the other vehicle, not the self-insured vehicle.  As a result, UM/UIM coverage does not fall within the scope of "any liability imposed by law."

Finally, the Kansas Supreme Court noted that the statutory scheme does not support incorporating UM/UIM coverage to self-insurers. The fact that the UM/UIM statute exists separately and preceded the enactment of KAIRA adds further credence to finding that self-insurers in Kansas are not required to provide UM/UIM coverage to the occupants of its motor vehicles.  Moreover, if the legislature intended for self insurers to comply with Kan. Stat. Ann. § 40-284, it would have specifically included the requirements in Kan. Stat. Ann. § 40-3104(f).

After reviewing the relevant statutes, the Kansas Supreme Court determined that the legislature intended to treat self-insurers and insurers differently.  Based on its review of the statutory construction, the court found four premises to support this conclusion:

First, the legislature, when enacting K.S.A. 40-284, used specific language which

refers to an "automobile liability insurance policy." Second, our legislature defined insurer and self-insurer differently without stating that self-insurers were equivalent to insurers. Third, the statutory language implies a narrow definition of liability and limits the requirements for self-insurers. Fourth, the UM/UIM statute was placed in the general statutes pertaining to insurers rather than in the KAIRA.

Farmers Insurance Company v. Southwestern Bell Telephone Co., No. 91-523 (filed June 10, 2005).  As a result, the requirements for insurers cannot be applied to self insurers without express legislative language. Since the legislature has not outlined specific requirements for self-insurers in regard to UM/UIM coverage, the court will not read such a requirement into the relevant statutes.

Having found that a self-insurer is not required to provide UM/UIM coverage, the court does not reach plaintiffs' other arguments.

IT IS ACCORDINGLY ORDERED this 23d day of August 2005, that the court grants defendant's Motion for Summary Judgment (Dkt. No. 18) and denies plaintiffs' Motion for Summary Judgment (Dkt. No. 19).

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE